MELTON, Justice,
dissenting.
As OCGA § 12-7-6 (b) (15) (A) is currently written, there is no guidance as to the measurement of a buffer zone for state waters lacking wrested vegetation. This raises an ambiguity, and, in the presence of such an ambiguity, this Court must give strong deference *310 to the interpretation of the statute made by the Director of the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources. In this case, however, the EPD’s interpretation that OCGA § 12-7-6 (b) (15) (A) requires no buffer at all for state waters without wrested vegetation is unreasonable, given the explicit purpose of the statute to lend some level of protection to all state waters. As a result, I must respectfully dissent.
The Erosion and Sedimentation Act of 1975 was intended to protect state waters and related wildlife and vegetation from the detrimental effects of sediment and erosion caused by land disturbing activities. OCGA § 12-7-2 plainly states:
It is found that soil erosion and sediment deposition onto lands and into waters within the watersheds of this state are occurring as a result of widespread failure to apply proper soil erosion and sedimentation control practices in land clearing, soil movement, and construction activities and that such erosion and sediment deposition result in pollution of state waters and damage to domestic, agricultural, recreational, fish and wildlife, and other resource uses. It is therefore declared to be the policy of this state and the intent of this chapter to strengthen and extend the present erosion and sediment control activities and programs of this state and to provide for the establishment and implementation of a state-wide comprehensive soil erosion and sediment control program to conserve and protect the land, water, air, and other resources of this state.
For this reason, the Legislature established buffer zones to protect state waters from land disturbing activities in their proximity. OCGA § 12-7-3 (2) defines a “buffer” as “the area of land immediately adjacent to the banks of state waters in its natural state of vegetation, which facilitates the protection of water quality and aquatic habitat”'[7] (Emphasis supplied.) The particular buffer at issue *311 in this matter is set forth in OCGA § 12-7-6 (b) (15) (A), which requires “a 25 foot buffer along the banks of all state waters, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action.” (Emphasis supplied.) The problem with this statute, however, is that it does not provide a measurement for a buffer zone along the banks of state waters without wrested vegetation. As a result, the EPD is called upon to interpret the statute in a way to effectuate its underlying meaning and purpose in the context where no wrested vegetation exists.
In the presence of such an overt ambiguity, strong deference must be given to the interpretation of the statute given by the appropriate administrative agency. As set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 844 (II) (104 SCt 2778, 81 LE2d 694) (1984):
The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.
(Citations and punctuation omitted.)
With this in mind, deference must be given to the determination by the Director of the EPD that state waters without wrested vegetation are entitled to no buffer at all. The required deference, however, is strong, but not absolute. Here, the EPD’s extreme interpretation of OCGA § 12-7-6 (b) (15) (A) is unreasonable and manifestly contrary to the statute, which is intended to “protect water quality and aquatic habitat” of all state waters. Providing no buffer *312 at all to state waters without sufficient wrested vegetation works to the detriment of the statutory purpose, and, as such, cannot be considered reasonable.
Decided June 15, 2015.
Samuel S. Olens, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, James D. Coots, Senior Assistant Attorneys General, Britt C. Grant, Assistant Attorney General, for Turner.
William W. Sapp, Nathaniel H. Hunt; Charles M. Cork III, for Georgia River Network.
Cook, Noell, Tolley & Bates, Edward D. Tolley, Devin H. Smith; Kevin S. Cauley, for Grady County Board of Commissioners.
King & Spalding, Patricia T. Barmeyer, Lewis B. Jones; Stack & Associates, Donald D. J. Stack, Kevin H. Jeselnik, amici curiae.
The arbitrariness of the EPD’s interpretation becomes even more evident when one considers OCGA § 12-7-6 (b) (16), which provides, in part: “[t]here is established a 50 foot buffer, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action, along the banks of any state waters classified as ‘trout streams’ pursuant to Article 2 of Chapter 5 of this title.” Under the EPD’s interpretation, trout would be protected based solely on whether they were swimming in a stream with wrested vegetation — a distinction that makes no sense and one which the Legislature would not have intended.
Accordingly, though I do believe that the EPD may reasonably interpret the ambiguity present in OCGA § 12-7-6 (b) (15) (A),[8] that interpretation must extend at least some level of buffer protection to state waters without wrested vegetation. Otherwise, the purpose of the Erosion and Sedimentation Act to protect water quality and aquatic habitat for all state waters is inappropriately undermined.

 In footnote 5, the majority opinion argues that the statute is intended to protect the natural vegetation growing along state waters. It later states: “Where there is no natural vegetation, there is nothing to preserve, and so the decision of the General Assembly to limit the buffer requirements to state waters with wrested vegetation is not absurd.” This argument is logically untenable, as it rests on the idea that there will never be any natural vegetation along any state waters without wrested vegetation. The absence of wrested vegetation, or vegetation which has been pulled away from the banks by flowing water, does not mean that there is no natural vegetation left. To the contrary, where there is no wresting action, the natural vegetation remains, likely growing from the water and up the banks. Even if the purpose of the statute is to protect the natural vegetation growing along state waters, the absence of wrested *311 vegetation, which would suggest conditions appropriate for the continued presence of natural vegetation, would not he an appropriate reason to have no buffer at all. To the contrary, it would make it even more unreasonable to resort to an interpretation that provides no buffer to protect natural vegetation.

 The majority mischaracterizes this plain statement by arguing that this opinion proposes that the courts should make decisions regarding water management practices and the size of buffer zones. As plainly stated, this opinion leaves those decisions to the expertise of the EPD. However, where an administrative agency makes an unreasonable interpretation of a vague statute, as in this case, it is the duty of the courts to require the EPD to reassess its interpretation.